IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Denardo T. Graham,                              )          C/A No. 0:15-772-TMC-PJG
                                                )
                    Plaintiff,                  )
                                                )
v.                                              )          **REPORT AND RECOMMENDATION**
                                                )
AW Randall Williams; Sgt. Bryant; Nurse         )
Pamela Garrick,[1]                              )
                                                )
                    Defendants.                 )
_____)

The plaintiff, Denardo T. Graham, a self-represented state prisoner, filed this action against

the named defendants pursuant to 42 U.S.C. § 1983.  This matter is before the court pursuant to 28

U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on

the defendants' motions to dismiss and for summary judgment.  (ECF Nos. 18 & 44.)  Pursuant to

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Graham of the summary

judgment and dismissal procedures and the possible consequences if he failed to respond adequately

to the defendants' motions.  (ECF Nos. 19 & 45.)  Graham filed responses in opposition to the

defendants' motions and a cross-motion for summary judgment.  (ECF Nos. 31 & 51.) Having

reviewed the parties' submissions and the applicable law, the court finds that the defendants'

motions should be granted and Graham's motion denied.

_____

[1] The court notes that some confusion exists in the record concerning the named nurse
defendant.  Graham clarifies in his deposition testimony that his claims in this matter lie against
Pamela Derrick, a Health Care Authority Registered Nurse for the South Carolina Department of
Corrections, in her capacity as head nurse. (Graham Dep. 53:17-54:3, 56:10-25, ECF No. 44-1 at
8-10.)  In that capacity, Graham alleges that Nurse Derrick was responsible for, and signed off on,
the procedures used by Nurse Jamie Spalding Garrick—the nurse who examined Graham following
the January 3, 2014 incident at issue here.  (Id.)  Accordingly, the nurse defendant in this matter is
more properly identified as Nurse Pamela Derrick.



## BACKGROUND

Graham's Complaint asserts claims pursuant to 42 U.S.C. § 1983 alleging excessive force and deliberate indifference to medical needs stemming from an incident on January 3, 2014 at the Allendale Correctional Institution during which Graham was sprayed with chemical munitions.

The following facts are taken in the light most favorable to Graham, to the extent they find support in the record.  Graham alleges that Defendant Bryant, a correctional officer with the South Carolina Department of Corrections ("SCDC"), was escorting Graham from the mental health department back to Graham's cell in the Special Management Unit ("SMU") when the two of them began arguing.  According to Graham, even after Bryant had returned Graham to his cell, they continued to argue, and Bryant told Graham to "shut the f*** up."  Graham states that he turned his head toward Bryant and stated "f*** you."  According to Graham, Bryant then sprayed Graham in the eyes with chemical munitions while Graham was fully restrained.  Graham admits that Nurse Jamie Spalding Garrick—who is not a defendant in this matter—came to see him after this incident, but that she did not "administer[] no medical attention."  Graham complains that, even after a year, he is unable to see out of his eye due to continued blurriness and has been provided sub-standard medical care.  (See generally, Compl., ECF No. 1.)

## DISCUSSION

**A.    Applicable Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint.  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v.



Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id.  When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The court observes that it is required to liberally construe *pro se* complaints.  Id.  Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case.  Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Twombly, 550 U.S. 544, 555-56 (2007)).  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not



disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.    Defendants' Motions to Dismiss and for Summary Judgment**

**1.    Official Capacity Claims**

To the extent that Graham is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects



of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacities for monetary damages, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

####     2.     Eighth Amendment—Excessive Force

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Graham must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a



condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work

PJG

in an environment where there is an ever present potential for violence and unrest, and that courts

should not substitute their judgment for that of the officials who must make a choice at the moment

when the application of force is needed.  Id.  The deference owed to prison administrators extends

to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison

discipline."  Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical

munitions in a prison setting.  See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v.

Turner, 736 F.2d 963, 969 (4th Cir. 1984).  In Bailey, the Fourth Circuit held that as long as the

quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the

Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the

obedience of a recalcitrant prisoner.  Bailey, 736 F.2d at 969-70.  The Bailey Court found that the

Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them

to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Whether the use

of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the

circumstances, the provocation, the amount of gas used, and the purposes for which the gas was

used."  Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace

may be much more humane and effective than a flesh to flesh confrontation with an inmate" and

"because a limited use of mace constitutes a relatively mild response compared to other forms of

force, the initial application of mace indicates a tempered response by the prison officials."

Williams, 77 F.3d at 763 (internal quotations marks and citation omitted).

As described above, Graham alleges that Defendant Bryant used excessive force when he

allegedly sprayed Graham in the face with chemical munitions.  Graham also alleges that Defendant



Williams, in his supervisory capacity as associate warden, was responsible for Defendant Bryant's actions. (See Compl., ECF No. 1 at 3; see also Graham Dep. 56:18-19, 57:23-24, ECF No. 44-1 at 10-11.)

In support of their motion for summary judgment, the defendants have provided an incident report, a use of force report, a "min narrative," Graham's medical history summary, excerpts from Graham's deposition, Graham's disciplinary history, and affidavit testimony from Defendants Williams, Bryant, and Derrick. Graham also provides support for his response in opposition in the form of affidavit testimony, requests to staff, inmate grievances, and the defendants' responses to his discovery requests.

Applying the Whitley factors to the facts viewed in the light most favorable to Graham, the court concludes that no reasonable jury could find that the amount of force used was unconstitutionally excessive. Importantly, Graham acknowledges that he had been arguing with Defendant Bryant and admits that, when Bryant told him to be quiet, Graham responded by cursing at him. Graham also acknowledges under oath that arguing with SCDC staff and cursing at Bryant were violations of SCDC rules and policies. (Graham Dep. 31:4-16, 35:9-15, ECF No. 44-1 at 2-3.) The defendants provide affidavit testimony in which they aver that Graham had become verbally abusive and that, when directed to stop his abusive and foul language, Graham did not comply and instead "began yelling to other Inmates to incite them," which behavior "especially in the SMU . . . places SCDC staff members and the Inmate population in an un-safe condition and requires decisive and controlled action to maintain a safe environment." (Bryant Aff. ¶¶ 6-7, ECF No. 44-2 at 1-2; Williams Aff. ¶ 10, ECF No. 44-4 at 2.) Graham does not refute the defendants' testimony with regard to inciting other inmates, but swears generally that "[t]here was never a directive given to



me."[2]  (Graham Aff., ECF No. 51-1.)  The defendants also testify that standard procedure provides

that SMU inmates, upon being placed in their cells, must back up to their cell door once it has been

closed so that their handcuffs can be removed, and that Graham refused multiple directives to back

up to the door to return his handcuffs.  (Bryant Aff. ¶¶ 8-9, ECF No. 2.)  According to the

defendants, following Graham's refusal to comply with multiple directives to return his handcuffs

and to stop using abusive and vulgar language, Bryant administered a short burst of chemical

munitions "to regain control of [Graham] and to control the situation," after which Graham

immediately backed up to the door and was uncuffed.  (Id. ¶¶ 9-10.)  Graham is likewise silent on

his compliance with regard to the removal of his handcuffs.  Instead, Graham argues that, because

he was fully restrained and in a locked cell, Graham posed no danger to Bryant or to Graham's

cellmate, and that therefore Bryant's use of chemical munitions constituted excessive force.  (Pl.'s

Resp. Opp'n Summ. J., ECF No. 51 at 3.)

The undisputed evidence in the record shows, at the very least, that Graham's disobedience

regarding Bryant's instruction to be quiet and Graham's attempt to incite other inmates in the SMU

necessitated the use of the mace.  Bailey, 736 F.2d at 969-70.  The defendants' evidence, not refuted

by Graham,  demonstrates that Graham's behavior posed a threat in that Graham, despite being fully

restrained, was attempting to incite other inmates in the SMU.  Accordingly, even though Graham

was restrained, he nonetheless presented a threat to the order of the SMU and the safety of those

officers and inmates inside it.  See Whitley, 475 U.S. at 321.  Additionally, while Graham claims that

the use of chemical munitions was excessive, the use of force report indicates that a relatively small

---

[2] As stated previously, Graham readily agrees that Bryant told him to "shut the f*** up," but appears to disagree that this statement constituted a directive. (See Graham Dep. 31:17-24, ECF No. 44-1 at 2.)



amount of fifteen grams of chemical munitions was administered by Bryant. (Use of Force Report, ECF No. 44-3 at 4); see, e.g., Kemp v. Drago, C/A No. 1:12-1481-JFA-SVH, 2013 WL 4874972, at *7 (D.S.C. Sept. 11, 2013) (adopting Report and Recommendation finding the use of 72 grams of chemical munitions, while significant, justified where a prisoner failed to comply with an order); Robinson v. S.C. Dep't of Corr., C/A No. 5:10-2593-HMH-KDW, 2012 WL 851042, at *7 (D.S.C. Mar. 23, 2012) (adopting Report and Recommendation finding "two short bursts of chemical munitions" totaling 31 grams to be a small amount that was not unconstitutionally excessive); Plummer v. Goodwin, C/A No. 8:07-2741-TLW-BHH, 2010 WL 419927, at *7 n.4 (D.S.C. Jan. 29, 2010) (adopting Report and Recommendation finding the use of 33.5 grams of chemical munitions to be "not constitutionally relevant"). The small amount discharged weighs in favor of the efforts of the officer to temper the severity of the force applied and the commensurate relationship between the need for force and the amount used. See Whitley, 475 U.S. at 321. As well, it indicates that the burst was rendered to restore order and institutional security rather than maliciously or sadistically to cause harm. Id. at 322. Moreover, the defendants have provided evidence of Graham's disciplinary history demonstrating Graham's propensity toward violent and disruptive behavior, including numerous instances of refusing or failing to comply with staff directives and disrespecting SCDC staff. (Williams Aff. ¶ 13, ECF No. 44-4 at 2-3; Inmate Offense History, ECF No. 44-5.) This supports the reasonableness of the officers' perception that Graham's behavior posed a threat. Thus, even viewing the record in the light most favorable to Graham, no reasonable jury could find that Bryant's perception of Graham's recalcitrant behavior and the risk his behavior posed was unreasonable. See Whitley, 475 U.S. at 321-22. Additionally, examining the extent of injury actually inflicted, the court observes that Graham was seen by medical personnel following the

Page 10 of 14



incident, where it was noted that Graham was observed to have no respiratory difficulties and that he had running water with which to wash out his eyes. (Med. Rec., ECF No. 44-9 at 25; Derrick Aff. ¶¶ 8-11, ECF No. 44-8 at 2.) The medical records also indicate that Graham was seen approximately eighty-eight times by SCDC medical personnel between the time period of January 3, 2014 and March 20, 2015 and was provided follow-up care for his subsequent complaints regarding his left eye, including examinations by medical personnel, prescribed eye drops, and vision tests indicating that he had at or near 20/20 vision. (Derrick Aff. ¶¶ 13-17. ECF No. 44-8 at 2-3; Med Rec., ECF No. 44-9.) Accordingly, applying both the Whitley and Bailey factors, the court concludes that no reasonable jury could find that the use of mace was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

### 3.    Defendants Williams and Derrick

Graham specifically states in his Complaint and deposition testimony that his claims against Defendants Williams and Derrick arise in their supervisory capacities as associate warden and head nurse, respectively, and acknowledges that these defendants did not directly participate in either the incident involving the deployment of chemical munitions or the medical treatment that was rendered thereafter. (Compl., ECF No. 1 at 3; Graham Dep. 56:15-21, 57:20-25, ECF No. 44-1 at 10-11.) Instead, Graham asserts that Defendant Williams was responsible for Defendant Bryant's actions and that Defendant Derrick "signed off" on the medical care that Nurse Garrick provided to Graham. (Graham Dep. 53:24-54:3, 56:15-21, ECF No. 44-1 at 8-10.) Graham attaches to his Complaint a Step 1 grievance that contains a response and signature from Defendant Williams. (ECF No. 1-1.)



The defendants' motion to dismiss argues that Graham's claims against these defendants should be dismissed under the theory of *respondeat superior*. (ECF No. 18 at 5-6.)

The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting).

While Fourth Circuit precedent recognizes that supervisory officials may be held liable in some circumstances for constitutional injuries directly inflicted by their subordinates, Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994), certain criteria must be demonstrated to trigger such liability. A plaintiff must show that the supervisory official (1) was actually or constructively aware of a risk of constitutional injury, (2) was deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Carter v. Morris, 164 F.3d 215, 221 (4th Cir.1999). As discussed above, Graham fails to demonstrate a cognizable constitutional claim against Defendant Bryant or any constitutional injury resulting from his actions. Moreover, although Graham alleges that



Defendant Derrick "signed off" of the January 3, 2014 medical encounter, the record reveals that this encounter was actually signed off on by Nurse Garrick and Dr. Thomas Byrne. Therefore, Graham's claims against Defendants Williams and Derrick for actions taken by subordinate employees should be dismissed.

**C.     Other Claims**

To the extent Graham is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the defendants' motions should be granted (ECF Nos. 18 & 44) and Graham's motion denied (ECF No. 31).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 25, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).